IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| K.N.O. by and through parent & guardian, Sabrina Patterson,  ) ) ) Plaintiff,                                   ) ) v.                                                 ) ) MICHAEL J. ASTRUE,                      ) Commissioner of Social Security,      ) ) Defendant.                                ) | CIVIL ACTION NO. 2:09cv753-CSC (WO) |

**MEMORANDUM OPINION**

The plaintiff Sabrina Patterson filed this lawsuit on behalf of her daughter, K.N.O.,[1] to review a final judgment by Defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that K.N.O. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner.[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to her only by her initials, K.N.O.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[3] For the reasons that follow, the court concludes that the Commissioner's decision denying K.N.O. supplemental security income benefits is due to be affirmed.

## I. STANDARD OF REVIEW

In 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining child disability under the Social Security Act. *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996). The revised statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically

---

[3] 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

>equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments does not meet, or is not medically equal or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d) (2003). In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

## II. PLAINTIFF'S CLAIM

As stated by the plaintiff, the issue for the Court's review is "whether the ALJ erred by failing to adequately consider if the severe impairment of epilepsy met or equaled the listing at 20 C.F.R. 404, Supt. P., App. 1 § 111.02B." (Doc. # 12, Pl's Br. at 1 & 4).

## III. DISCUSSION

The ALJ, in his opinion, followed the regulations' three steps as listed above when he analyzed K.N.O.'s claim. Under the first step, the ALJ found that K.N.O. is not engaged in substantial gainful activity. At the second step, the ALJ found that K.N.O. has severe impairments of "psychomotor epilepsy, complex partial seizure disorder, obesity, asthma and allergic rhinitis." (R. 20). Next, at step three, the ALJ found that K.N.O. did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and

416.926)." (R. 23). The ALJ also found that K.N.O. "does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a)." (*Id*). The ALJ concluded that K.N.O.'s limitations result in no or less than marked limitations in five of the six domains of functional limitations, and that she has marked limitations only in the health and physical well-being domain of functional limitation. (R. 25-29). Consequently, the ALJ concluded that K.N.O. is not disabled.

K.N.O. suffers from epilepsy and complex partial seizure disorders, both of which are severe impairments, however,

> [t]he evidence reflects that although the claimant receives treatment for her seizures and for asthma and allergies, they are fairly well controlled and her treatment/medication are being monitored. She has had extensive testing and her physicians have treated her with medications and have not placed such severe restrictions on the claimant that she would be considered disabled. The evidence reflects that the claimant is able to participate in the activities that are generally associated with normal daily living, with the seizure precautions. The school records do not reflect severe problems with health/medication although the claimant's mother testified that the claimant had been absent approximately 15 days.

(R. 25).

The only issue raised by the plaintiff is whether the ALJ's failed to properly consider whether K.N.O. meets or equals Listing 111.02B because of the side effects of her medication. The Commissioner's Listings provide, in pertinent part, that a child is disabled due to convulsive epilepsy syndrome if she meets the following criteria:

> 111.02 *Major motor seizure disorder*.
>
> \*     \*     \*

   *B. Convulsive epilepsy syndrome.* In a child with an established diagnosis of epilepsy, the occurrence of at least one major motor seizure in the year prior to application despite at least three months of prescribed treatment. And one of the following:
      1.   IQ of 70 or less; or
      2.   Significant interference with communication due to speech, hearing, or visual defect; or
      3.   Significant mental disorder; or
      4.   Where significant adverse effects of medication interfere with major daily activities.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In 2003, K.N.O. experienced three seizures when she was sick with a high fever. (R. 99). In 2005, she began experiencing seizures even when she was not sick. (R. 115). She was hospitalized in April 2005, and diagnosed with epileptic seizures. (R. 116-124). She was prescribed Diastal "for any prolonged seizures greater than 5 minutes." (R. 117). She was hospitalized again in September 2005 after suffering an epileptic seizure for more than an hour. (R. 128). Her EEG report was consistent with "partial-onset epilepsy." (*Id*.)

On November 13, 2005, K.N.O. was hospitalized after suffering multiple seizures. (R. 187-190). Dr. Tony McGrath, K.N.O.'s treating physician in Birmingham, prescribed Carbitrol to control her seizures. (R. 189). Two days later, K.N.O.'s mother complained to Dr. Leatha Barber-Morgan, her family physician in Montgomery, that the Carbitrol was making K.N.O. dizzy in the morning. (R. 131).

On June 7, 2006, K.N.O. was seen by Dr. Lane Rutledge. (R. 204-06). Although K.N.O.'s mother complained about K.N.O.'s weight gain since being on Carbitrol, K.N.O. was "tolerating the Carbitrol without difficulty and she takes it well." (R. 205). During the

examination, she was "[a]wake and alert with appropriate mental status and language for age." (R. 206).

On August 10, 2006, K.N.O. arrived at the emergency room suffering from a seizure. (R. 277-81).

On September 12, 2006, K.N.O. presented to the emergency room after suffering a seizure at school. (R. 271-76). Dr. McGrath saw K.N.O. on September 13, 2006 for a follow-up visit. (R. 202-03). Because K.N.O. had suffered a seizure the day before, Dr. McGrath increased her dosage of Carbitrol. (*Id.*) Her mother expressed no concerns regarding the medication. (*Id.*).

On December 5, 2006, K.N.O. experienced an epileptic seizure at school and was taken to the emergency room. (R. 262-71). Dr. Barber-Morgan saw K.N.O. on December 7, 2006 as a follow-up to the emergency room visit. (R. 210). Dr. Barber-Morgan suggested that K.N.O. be seen by Dr. McGrath. (*Id.*) K.N.O.'s mother made no complaint about any side effects from the Carbitrol. (*Id.*)

On August 12, 2007, K.N.O. experienced a seizure and was taken to the emergency room. (R. 245-53). She was awake and alert upon arrival. (R. 245, 252). On October 13, 2007, K.N.O. was taken to the emergency room after experiencing a seizure. (R. 239-44). The admission note indicated that K.N.O. had not taken her seizure medication that day. (R. 239). K.N.O. was see by Dr. McGrath on October 18, 2007 (R. 198-201). Her mother expressed no concern about side effects from the Carbitrol. (*Id.*). On November 2, 2007,

K.N.O. presented at the emergency room suffering from a seizure. (R. 233-38).

K.N.O. was hospitalized in December 2007 for extensive monitoring and testing of her epilepsy. (R. 218-26, 229-232). Her mother reported the following:

> [S]eizures are less intense. (They do not generalize), and less often since the increase of her Carbatrol (sic) last year. . . .She has had some weight gain over the years. Mom reports that she is always congested. [K.N.O.] does have some difficulty breathing with exercise, and has a chronic cough and reported asthma. She does have some abdominal pain noted, and has had frequent headaches with history of seizures reported. Mom states that she has had some problems with depression, and endocrine wise, she is over weight.

(R. 218-19).

The medical record clearly demonstrates that K.N.O. suffers from epileptic seizures, and she is treated with the medication Carbitrol. At the administrative hearing, K.N.O.'s mother testified that the medication "makes her drowsy and it's hard for her to stay awake in class to pay attention to her teacher and keep up with the rest of the kids." (R. 286). She further testified as follows.

> Q: Is she drowsy at school?
> A: Yes, because she takes the medication before she goes to school and when she gets home at bedtime. So, in the morning before she leaves home she has to take the medications and it has her sleepy like half the day.
> Q: Okay, do you think that's affecting her learning I guess is what I understand?
> A: Yes, sir.
> Q: Does she seem to do better a little later in the day? I guess if you have two different types of medications working on her here but, and I don't know if it's reflected in the school grades for that particular, what I'm trying to say is let's just say for the sake of argument that math is taught at 11:00.
> A: Right.

>   Q: Does she seem to be more alert when she's –
>   A: I don't think so.
>   Q: You don't think so?
>   A: No, sir.
>   Q: Okay, well what about at 1:00?
>   A: I'd say maybe around the time she gets home she may be a little alert but she's still tired, still sleepy.
>   Q: Okay, so you think it's affecting her whole day at school?
>   A: Yes, sir, I really do.

(R. 291-92).

The administrative hearing in this case was held on June 12, 2008. (R. 282). At the conclusion of the hearing, the ALJ requested that the plaintiff submit a teacher questionnaire to determine whether the medication was affecting K.N.O.'s ability to learn and pay attention. (R. 299). The ALJ gave the plaintiff's attorney three (3) weeks to submit a teacher questionnaire specifically addressing K.N.O.'s condition while at school. (R. 300-02). On July 3, 2008, counsel requested additional time to submit the teacher questionnaire. (R. 97). On July 18, 2008, counsel again requested time to secure the questionnaire. (R. 96). Finally, on August 10, 2008, counsel informed the ALJ that "school is now back in session. I hope to have the Teacher Questionnaire soon." (R. 95). Thereafter, counsel did not submit the requested questionnaire from any of K.N.O.'s teachers.[4]

Relying solely on her mother's testimony, K.N.O. argues that she suffers from significant adverse effects of medication, and thus, she meets or equals Listing for 113.02B(4). In concluding that K.N.O. did not meet, equal or functionally equal any of the Listings, the

---

[4] The plaintiff offers no explanation as to why a teacher questionnaire was not submitted to the ALJ for his consideration.

8

ALJ considered the testimony of K.N.O.'s mother.

> The claimant's mother alleged the claimant had epilepsy with seizures and asthma. The claimant was in the fourth grade and she was promoted to the fifth grade. Her grades were not good and they started dropping in 2006 and "tremendously" in 2007/2008 because of drowsiness. . . . The claimant's mother stated she was in special classes in school and got one on one instruction. The medications made her sleepy and that affected her learning....

(R. 23).

The ALJ did not fully credit K.N.O.'s mother's testimony about the side effects of the medication. After considering the testimony, school records and medical evidence, the ALJ acknowledged that K.N.O. has impairments that could reasonably be expected to produce the side effects and symptoms about which her mother testified, but the ALJ then concluded that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." (R. 24). The ALJ then detailed K.N.O.'s medical and school records, interspersing reasons for discounting her mother's testimony. (R. 24-25).

Where an ALJ decides not to credit a witness's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 D.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit

such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Relying on the medical and school records, the ALJ concluded that the K.N.O.'s underlying impairments are capable of giving rise to some of the side effects about which her mother testified, however not to the extent described by her mother.

After a careful review of the record, the court concludes that although the ALJ's reasons for discrediting the K.N.O.'s mother's testimony could have been more clearly articulated, his reasons were supported by substantial evidence. The only evidence that K.N.O. suffers from any significant side effects from her medication is her mother's testimony. Her mother offers no explanation as to how she knows that K.N.O. is not alert at school. No school records support her testimony. Moreover, the medical records do not substantiate her mother's testimony. For example, since being prescribed Carbitrol in 2005, K.N.O. was seen by Dr. Barber-Morgan on January 30, 2006, May 1, 2006, May 10, 2006, June 5, 2006, July 31, 2006, October 12, 2006 and December 7, 2006. (R. 210-17). Not once during those visits did K.N.O.'s mother complain about drowsiness, sleepiness or any other side effect from the Carbitrol. Her mother complained only once that K.N.O. appeared dizzy

in the morning, and then she complained only that the medication was causing weight gain. The only evidence that K.N.O. suffers from "significant adverse" side effects is her mother's testimony which is wholly conclusory, inconsistent with the medical records and unsupported by other objective evidence. Consequently, her mother's testimony, standing alone, cannot constitute substantial evidence. Thus, the ALJ's conclusion that K.N.O. does not have meet or equal Listing 113.02 is supported by the record.

To the extent that K.N.O. is arguing that the ALJ should have accepted her mother's testimony regarding her side effects from her medication, as the court explained, the ALJ had good cause to discount that testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**CONCLUSION**

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that K.N.O. is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 2nd day of August, 2010.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE